UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEJADAWN DE DEAUX,

    *Plaintiff*,

v.

KILOLO KIJAKAZI,
Commissioner of Social Security,

    *Defendant*.

No. 21-cv-682 (DLF)

## MEMORANDUM OPINION

In this action, plaintiff Dejadawn M. De Deaux challenges the Social Security Commissioner's denial of her claim for Supplemental Security Income Benefits. Before the Court are the plaintiff's Motion for Judgment of Reversal, Dkt. 13, and the defendant's Motion for Judgment of Affirmance, Dkt. 14. For the reasons that follow, the Court will grant De Deaux's motion in part and deny it in part, and it will grant the Commissioner's motion in part and deny it in part.

**I.   BACKGROUND**

    **A.   Statutory Background**

The Social Security Act defines a person as disabled and thus eligible for disability benefits if she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)).

To evaluate whether a claimant is in fact disabled, the SSA engages in a five-step evaluation process. 20 C.F.R. § 416.920(a)(4). At the first step, the claimant must show that she is not currently working or "doing substantial gainful activity." *Id.* § 416.920(a)(4)(i). At the second step, the claimant must demonstrate that she has either "a severe medically determinable physical or mental impairment" or "a combination of [severe] impairments" that meets specified duration requirements and "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 416.920(a)(4)(ii), 416.920(c). At the third step, the claimant must show that her impairment "meets or equals" one of the disabilities listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(a)(4)(iii). If this step is met, the inquiry will end and result in a finding that the claimant is disabled. *Id.*

If the third step is not met, the inquiry will proceed to the fourth step, in which the Administrative Law Judge (ALJ) assesses the claimant's residual functional capacity. If the ALJ determines that the claimant, given her impairment, is able to perform her past relevant work, then the inquiry ends and the claimant is found to be not disabled. *Id.* § 416.920(a)(4)(iv). "[If] a claimant has carried the burden on the first four steps, the burden shifts to the Commissioner on step five to demonstrate that the claimant is able to perform other work based on a consideration of her [residual functional capacity], age, education, and past work experience." *Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (cleaned up); *see* 20 C.F.R. § 416.920(a)(4)(v).

**B.     Factual and Procedural Background**

De Deaux is a thirty-six-year-old mother who suffers from physical health conditions, including ulcerative colitis and type I diabetes, and mental health conditions. Administrative Record (AR) at 1054–55, Dkt. 11. She was previously employed as, among other things, a service operation assistant at the Army and Air Force Exchange Services. *Id.* at 42–43, 1054.

On April 11, 2017, De Deaux filed an application for disability benefits with an alleged onset date of April 7, 2017. AR 17. Her claim was denied. *Id.* at 104, 152. On reconsideration, her claim was approved, but the Social Security Administration's Office of Quality Review overruled the approval. *Id.* at 299–301. It concluded that De Deaux was not disabled because "[t]he medical evidence supports a lesser degree of mental health restrictions" on her residual functional capacity than the agency had previously found. *Id.* at 299.

At De Deaux's request, an ALJ held a hearing on December 5, 2019. *Id.* at 34–77. At the hearing, De Deaux testified that her colitis causes "flareups" in which blood comes out of her stool, and that she constantly takes treatments to manage her colitis. *Id.* at 55. She stated that her flare-ups can last up to a week, sometimes requiring hospitalization. *Id.* at 60. She also testified that she takes medications for "anger issues, depression, and bipolar disorder." *Id.* at 57–58. Finally, De Deaux noted that the medications she takes to control her ailments are "immune suppressants" and can therefore cause her to develop shingles outbreaks. *Id.* at 60–61.

In a ruling after the hearing, the ALJ found that De Deaux does not meet the definition for disability required under the Social Security Act. *Id.* at 28. At step one, he found that De Deaux has not engaged in substantial activity since her alleged onset date. *Id.* at 19. At step two, he found that De Deaux has the following severe impairments: "diabetes mellitus; ulcerative colitis; right carpal tunnel syndrome; right upper extremity deep venous thrombosis; right ulnar

neuropathy; obesity; affective disorder; attention deficit hyperactivity disorder; [and] substance abuse disorder." *Id.* At step three, the ALJ concluded that De Deaux does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. *Id.* at 20.

Moving on to step four, the ALJ found that De Deaux has the following residual functional capacity: "light work . . . limited to work involving simple, routine tasks, in a low-stress job, which is defined as having only occasional decision-making required and only occasional changes in the work setting. The claimant should have only occasional interaction with the public and work in an environment with only occasional supervision." *Id.* at 21–22. When presented with this residual functional capacity, a vocational expert had testified that De Deaux would still be able to work as a housekeeping cleaner, marker, or checker. *Id.* at 28. Thus, at step five, the ALJ concluded that De Deaux is capable of performing a job that exists in significant numbers in the national economy and therefore is not disabled. *Id.*

On March 15, 2021, De Deaux filed a complaint in this Court seeking review of her denial of benefits. Dkt. 1. Now before the Court are De Deaux's motion for judgment of reversal, Dkt. 13, and the Commissioner's motion for judgment of affirmance, Dkt. 14.

## II. LEGAL STANDARDS

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Butler*, 353 F.3d at 999 (quoting *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989)). "In reviewing an [ALJ's] decision, '[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.'" *Jones v. Astrue*, 647 F.3d 350, 355 (D.C. Cir. 2011) (quoting 42 U.S.C. § 405(g)). Substantial evidence means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). "The test requires more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Butler*, 353 F.3d at 999 (citation omitted).

"The reviewing court must give considerable deference to the Commissioner's decision but remains obligated to ensure that the decision was based on 'substantial evidence.'" *Pinkney v. Astrue*, 675 F. Supp. 2d 9, 14 (D.D.C. 2009) (quoting 42 U.S.C. § 405(g)). The ALJ is "entitled to weigh conflicting opinions and to make his own assessment of their credibility," *Brown v. Bowen*, 794 F.2d 703, 709 (D.C. Cir. 1986); however, the ALJ "cannot merely disregard evidence which does not support his conclusion." *Martin v. Apfel*, 118 F. Supp. 2d 9, 13 (D.D.C. 2000) (citation omitted). The Court "is not permitted to re-weigh the evidence and reach its own determination." *Maynor v. Heckler*, 597 F. Supp. 457, 460 (D.D.C. 1984).

## III.  ANALYSIS

De Deaux challenges the ALJ's finding that she is not disabled. In particular, she argues that the ALJ improperly discounted the medical opinion of her treating physician, Dr. Amy Stone, in assessing her residual functional capacity. Pl.'s Mot. for J. of Reversal at 8–9, Dkt. 13. She also contends that the ALJ failed to: (1) incorporate his own findings regarding De Deaux's mental limitations, *id.* at 10–13; (2) consider the assistance De Deaux receives in her activities of daily living, *id.* at 15–18; and (3) consider legitimate reasons for De Deaux's inability to follow her treatment regimens, *id.* at 18–20. The Court will grant De Deaux's motion for reversal as to her first challenge but deny her motion as to her remaining challenges.[1]

---

[1] De Deaux also argues that the ALJ failed to consider the effects of her extensive treatment in determining her residual functional capacity. *See* Pl.'s Mot. at 13–14; Pl.'s Reply at 11–12, Dkt. 18. The Court will not reach this challenge at this time for the reasons stated in section III.A, *infra*.

### A. Dr. Stone's Medical Opinion

For social security claims like De Deaux's that are filed after March 27, 2017, an ALJ shall "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion[]." 20 C.F.R. § 404.1520c(a). Rather, the ALJ must "articulate . . . how persuasive [he] find[s] all of the medical opinions," *id.* § 404.1520c(b), according to five factors: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion." *Id.* § 404.1520c(c). Supportability and consistency "are the most important factors," so federal regulations require an ALJ to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* § 404.1520c(b)(2). Supportability is defined as the "relevan[ce] [of] the objective medical evidence and supporting explanations presented by a medical source . . . to his or her medical opinion(s)." *Id.* § 404.1520c(c)(1). Consistency is the "consisten[cy] [of] a medical opinion[] . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2).

On August 2, 2018, Dr. Stone, De Deaux's treating physician, provided a medical opinion that De Deaux is "unable to work." AR 1314. The only support that Dr. Stone offered for her opinion was the following: "Ms. De Deaux has multiple and significant medical issues [that] have unfortunately required multiple hospitalizations and outpatient office visits. She will continue to require close monitoring for some time. This makes it so she is unable to work because she is sick so often." *Id.*

As brief of an explanation as Dr. Stone offered in support of her opinion, the ALJ did not clearly explain his reasons for discounting it. He acknowledged that "Dr. Stone [has] a treating relationship with the claimant," but he found her opinion unpersuasive solely because, according

6

to him, it was based on De Deaux's "subjective reports" about her "difficulty obtaining and sustaining employment." *Id.* at 27. This explanation was inadequate and arguably unsupported by the record.

As noted, the relevant regulations require an ALJ to specifically address the supportability and consistency of a medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2). Here, the ALJ made no attempt to do either. To be sure, Dr. Stone's opinion itself was cursory. Even so, the ALJ did not address the few bases Dr. Stone offered to support her opinion; instead, he rejected her opinion on the ground that he found it to be based primarily on De Deaux's "subjective reports" about her "difficulty obtaining and sustaining employment."[2] AR 27. The ALJ's explanation is therefore deficient and distinguishable from those found sufficient in by courts in this District. *Cf. Patricia T. v. Kijakazi*, No. 21-cv-1028, 2022 WL 3583634, at *14–*15 (D.D.C. Aug. 22, 2022) (affirming ALJ ruling where ALJ specifically addressed supportability and consistency and cited sufficient record evidence to support his or her findings); *Melanie A.S. v. Kijakazi*, 21-cv-185, 2022 WL 1721196, at *11–*12 (D.D.C. May 12, 2022), *report and recommendation adopted by* 2022 WL 1718987 (D.D.C. May 27, 2022) (same).

Without a more detailed explanation, the Court is unable to assess whether the ALJ's conclusion can be supported by the record. This is especially true in light of Dr. Stone's extensive treatment history with De Deaux. As her treating physician, Dr. Stone saw De Deaux on at least twenty medical occasions starting as early as February 2014. AR 426, 477, 492–98, 511, 650, 653,

---

[2] Elsewhere, the ALJ appeared to address, at least partially, one of the bases for Dr. Stone's opinion—the frequency of De Deaux's colitis flare-ups requiring hospitalization. *See* AR 23–24. Even so, the ALJ did not reference this explanation in discounting Dr. Stone's opinion, consider the other bases for her opinion, or otherwise discuss the supportability or consistency of her opinion. *See Ayala v. Kijakazii*, No. 20-cv-9373, 2022 WL 3211463, at *17 (S.D.N.Y. Aug. 9, 2022) (collecting cases finding that, under new regulations, a conclusory statement is insufficient to explain discounting of medical opinion).

7

673, 696, 703, 712, 897, 922, 977, 995, 1314, 1335, 1359, 1922, 1933, 2312, 2322, 2325. As her treatment notes reflect, Dr. Stone was professionally consulted by De Deaux about a wide range of medical concerns, ranging from diabetes follow-ups, *see, e.g.*, *id.* at 696, 1922, 2322, to mental health concerns, *see, e.g.*, *id.* at 897, 1206, 1359, 2501. Dr. Stone was also consistently listed as a member of De Deaux's care team, *see, e.g.*, *id.* at 849, and as the referring physician for visits with specialists, *see, e.g.*, *id.* at 524, 669, 1475, 1507, 1572, 1645, 1763, 1794. At a minimum, the ALJ needed to provide a more fulsome justification before rejecting Dr. Stone's opinion that De Deaux is unable to work.

The Commissioner's remaining arguments in support of the ALJ's discounting of Dr. Stone's opinion are unavailing. The Commissioner first questions "whether Dr. Stone's . . . letter even qualifies as a 'medical opinion,'" Def.'s Mot. for J. of Affirmance at 17, Dkt. 14, despite the fact that the ALJ explicitly found that Dr. Stone had expressed a medical opinion in her letter, *see* AR 25, 27. The Commissioner also asserts that the letter's purpose was "to advocate for [De Deaux] to maintain her daycare arrangement," and is "not substantiated by the record." Def.'s Mot. at 17. But the ALJ never identified either of these explanations as justifications for discounting Dr. Stone's letter. *See* AR 27. It is well-established that when "the government attempts to explain the ALJ's reasoning, . . . the Court may only consider the grounds proffered by the agency in its decision for post hoc rationalizations do not suffice." *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 32–33 (D.D.C. 2013); *see also Contreras v. Comm'r of Soc. Sec.*, 239 F. Supp. 3d 203, 209 (D.D.C. 2017) ("Such attempts at post hoc rationalization are insufficient to provide support for the ALJ's reasoning.").

Because the Court is unable to determine "the ALJ's rationale [for discounting Dr. Stone's opinion] . . . without further findings or [a] clearer explanation of the decision," remand is

appropriate for the Commissioner to reconsider Dr. Stone's medical opinion, taking into account *and* addressing the grounds she provided for her opinion and the requisite factors, including supportability and consistency.[3] *Ademakinwa v. Astrue*, 696 F. Supp. 2d 107, 111 (D.D.C. 2010); *see also Stubbs v. Saul*, No. 18-cv-1457, 2020 WL 1893173, at *6 (D.D.C. Mar. 23, 2020), *report and recommendation adopted by* 2020 WL 1891979 (D.D.C. Apr. 15, 2020) (finding remand warranted "where an ALJ mischaracterize[d] evidence that was presented"); *Ayala*, 2022 WL 3211463, at *5 (finding remand appropriate where ALJ did not follow new regulations for evaluating medical opinions).

### B.   Moderate Limitations in Concentration, Persistence, and Pace

De Deaux also argues that the ALJ failed to account for other, relevant evidence in making his residual functional capacity finding. An ALJ's residual functional capacity finding and the corresponding hypothetical question posed to the vocational expert "must accurately describe a claimant's impairments so that the vocational expert can adequately assess whether jobs exist for the claimant." *Petty v. Colvin*, 204 F. Supp. 3d 196, 205 (D.D.C. 2016). A "[f]ailure to accurately describe a claimant's impairments can serve as grounds for reversal." *Id.* De Deaux contends that the ALJ's conclusion about her residual functional capacity was flawed because it did not account for the ALJ's own, earlier finding that De Deaux has a moderate limitation in concentration, persistence, and pace. Pl.'s Mot. at 11–13. The Court disagrees.

---

[3] Because the Court will remand the case on this issue, it declines to decide whether the ALJ's explanation complied with the D.C. Circuit's "treating physician rule," *see Bennett v. Saul*, No. 18-1745, 2019 WL 5549815 (D.D.C. Oct. 27, 2019)), and whether the ALJ erred by asking the vocational expert a hypothetical question that conflicted with Dr. Stone's medical opinion, *see* Pl.'s Mot. at 19–20. Because Dr. Stone's opinion relied in part on the frequency of De Deaux's medical issues and their corresponding treatments, the Court also declines to decide whether the ALJ failed to consider the extent of De Deaux's treatment in determining her residual function capacity. If appropriate, De Deaux may raise any of these challenges to the Commissioner's decision after remand.

At the third step of his analysis, the ALJ found that De Deaux has a "moderate limitation" on "concentrating, persisting[,] or maintaining pace." AR 21. He then found that De Deaux nonetheless retains the ability to conduct "simple, routine tasks, in a low-stress job, which is defined as having only occasional decision-making required and only occasional changes in the work setting." *Id.* at 21–22. Weighing all the evidence, the ALJ concluded that De Deaux's mental health ailments, which include "depression, ADHD, and substance abuse," "would not prevent [her] from sustaining work involving simple, routine tasks, in a low-stress environment." *Id.* at 25.

Some courts in this District have adopted a rule that limiting a claimant's work to "simple, routine, repetitive[,] and unskilled tasks" does not "sufficiently capture[] the claimant's moderate mental limitations in concentration, persistence, or pace." *Petty*, 204 F. Supp. 3d at 206 (following other circuits in adopting rule); *see also Nsiah v. Saul*, No. 19-cv-42, 2021 WL 372784, at *1 (D.D.C. Feb. 3, 2021); *Demetria R. v. Kijakazi*, No. 20-3227, 2022 WL 3142376, at *14 (D.D.C. June 30, 2022), *report and recommendation adopted by* 2022 WL 3139026 (D.D.C. Aug. 5, 2022). But even these courts consider an ALJ's failure to follow this rule harmless where, as here, the "medical evidence [in the record] demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite [her] limitations in concentration, persistence, and pace." *Petty*, 204 F. Supp. 3d at 206 (citation and internal quotation marks omitted); *Demetria*, 2022 WL 3142376, at *15. Dr. Gregory Price conducted a psychological evaluation of De Deaux and found that she showed "[n]o evidence of limitation" in her ability to "sustain concentration and perform a task at a consistent pace." AR 648. Similarly, Dr. Cott, a state agency psychological consultant, concluded that De Deaux has moderate limitations in concentration, persistence, and pace but "appears to be able to maintain [concentration, persistence, and pace] in the routine workplace." *Id.* at 101–02. Drs. Nancy Heiser and D. Malone, reviewing psychologists, reached the same

conclusion. Both opined that De Deaux's "dysphoria and intermittent cognitive difficulties are not so frequent, intense, or pervasive as to seriously limit her ability to perform work-related tasks." *Id.* at 118, 120. They further explained that De Deaux "is an independently functioning adult" and "is not currently receiving any mental health services or psychiatric medication." *Id.* Finally, a fifth doctor, Dr. Leah Nathan, conducted a psychological evaluation and found De Deaux's "attention and concentration" "[i]ntact." *Id.* at 1057. She concluded that De Deaux would have only "mild limitation[s] to sustain concentration and perform a task at a consistent pace." *Id.* at 1058. De Deaux has identified no record evidence to contradict these medical findings. Substantial evidence therefore supports the ALJ's determination that De Deaux is capable of engaging in simple, routine, low-stress tasks in the workplace despite her limitations in concentration, persistence, and pace.

### C. Assistance Received in Activities of Daily Living

De Deaux further contends that "[r]eversal is required" because the "ALJ d[id] not consider the extent of the assistance [she] receives in completing activities of daily living." Pl.'s Mot. at 16 (citing *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014)). As evidence that she cannot conduct any activities independently, De Deaux points to her testimony before the ALJ about the assistance she receives from her thirteen-year-old son and mother who "help[] [her], for the most part, with everything." Pl.'s Mot. at 16; AR 65.

The record reveals that the ALJ properly considered and discounted De Deaux's testimony. When assessing the credibility of a claimant's statements about the severity of her symptoms, an ALJ may consider, among other factors, the claimant's daily activities. *Porter v. Colvin*, 951 F. Supp. 2d 125, 136 (D.D.C. 2013); 20 C.F.R. § 404.1529(c)(3). Here, the ALJ explicitly acknowledged that De Deaux "testified that she had help from her mother and her thirteen-year-

11

old." AR 21. Yet, he noted, "the record indicate[d] that she is well capable of sustaining normal activities of independent living." *Id.* Indeed, De Deaux recounted to examining psychologists on two separate occasions that she performs a large number of daily living activities independently. On November 15, 2017, she told Dr. Price that she:

> dresses, bathes, and grooms herself. She does laundry. She shops. She manages money. She cooks and prepares food. . . . She wakes up, gets the kids off to school, goes to her medical appointments, comes home, cooks, picks up the children from school, tries to hide in her room for five minutes to get some rest, and takes care of the children's homework assignments.

*Id.* at 648; *see also id.* at 25 (ALJ ruling referencing statements to Dr. Price). Again, on September 17, 2018, De Deaux informed Dr. Nathan that she "is able to groom herself and prepare a simple meal and engages in general cleaning, does the laundry, shops, manages her money, drives, and takes public transportation." *Id.* at 1058. Based on these activities, the ALJ concluded, De Deaux "has experienced no limitation" as to "adapting or managing [her]self," *id.* at 21, and therefore retains the ability to conduct "simple, routine tasks in a low-stress job," *see id.* at 25. Substantial evidence supports the ALJ's justification for discounting De Deaux's testimony. "[O]n this record, [the Court] find[s] no reason to disturb the ALJ's conclusion." *Brown*, 794 F.2d at 706 (deferring to ALJ's credibility determinations in face of contradictory evidence).

      **D.**     **Justifications for Poor Compliance with Treatment**

Finally, De Deaux argues that the "ALJ failed to consider good reasons in the record for [her] inability to follow some treatment regimes." Pl.'s Mot. at 18. The ALJ based his conclusion that De Deaux's limitations were not as serious as she claimed in part on De Deaux's "poor compliance with diabetic treatment." AR 24. To contest this characterization, De Deaux points to a handful of medical records that reveal that her various health conditions sometimes affected her ability to comply with a treatment regimen. Pl.'s Mot. at 19; Pl.'s Reply at 12–13. For

example, she sometimes experienced depressed moods and mental health difficulties that interfered with her ability to function, including her ability to take medication. AR 62, 892, 2370.

The record reflects that the ALJ considered De Deaux's history of mental health difficulties, *id.* at 25, and her concerns about taking her medications, *see, e.g.*, *id.* at 23. But he also found that, at times, De Deaux failed to comply with her diabetic treatment without justification. For example, as early as January 20, 2016, before the onset of some of her more severe mental health symptoms, *see id.* at 1354, 1359, De Deaux reported that she did not test her blood sugar levels at home. *Id.* at 696. And on August 12, 2016, she reported "marked deterioration in adherence to insulin regimen and blood glucose monitoring," including "not checking" blood glucose, without any justification. *Id.* at 551. On May 24, 2018, a doctor noted that De Deaux was "not taking . . . meds as prescribed" and that she stated, without explanation, that she did "not know what her [d]ose actually is." *Id.* at 879.

The ALJ's conclusion that De Deaux's poor compliance with diabetic treatment sometimes was not justified by her other impairments is therefore supported by substantial evidence. De Deaux suggests that the Court re-weigh conflicting evidence, but "substantial-evidence review is highly deferential to the agency fact-finder." *Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). A "court must carefully scrutinize the entire record, but [it] may not reweigh the evidence and replace the [Commissioner's] judgment regarding the weight of the evidence with its own." *Brown v. Barnhart*, 370 F. Supp. 2d 286, 288 (D.D.C. 2005) (internal quotation marks omitted). Because the ALJ's findings are well supported by the record, the Court will not second-guess his conclusions about De Deaux's inability to comply with her treatment.

## CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Judgment of Reversal is granted in part and denied in part, and the defendant's Motion for Judgment of Affirmance is granted in part and denied in part. A separate order consistent with this decision accompanies this memorandum opinion.

*Dabney L. Friedrich*
_____
DABNEY L. FRIEDRICH
United States District Judge

October 25, 2022